# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL DOCKET NO. 5:09CV127-V

| | |
|---|---|
| E. RICK MILLER CONSTRUCTION COMPANY,<br>        Plaintiff,<br><br>v.<br><br>ROBERT W. MUGRIDGE and<br>DEBORAH A. MUGRIDGE,<br>        Defendants. | **Memorandum and Order** |

**THIS MATTER** is before the Court upon Defendants' Motion to Vacate Arbitration Award. (Document #17) The Arbitration Order, dated August 9, 2011, was filed with this Court on August 22, 2011. (Document #14) Judgment was entered pursuant to the Arbitration Order on August 29, 2011. (Document #16)

## I. Background

This case arose out of a construction contract entered into between the parties between April 5, 2004 and April 20, 2004 and a subsequent dispute regarding the amount owed by Defendants Robert W. Mugridge and Deborah A. Mugridge (collectively "Mugridges") to Plaintiff E. Rick Miller Construction Company ("Miller CC")[1] for work allegedly performed pursuant to the contract ("Agreement").

Miller CC commenced this civil action against the Mugridges alleging breach of contract and quantum meruit. The Mugridges responded with counterclaims alleging breach of contract, fraud, and unfair and deceptive trade practices.

---

[1] E. Rick Miller Construction Company refers to President Rick Miller and his son, Gary. (Arbitration Order, ¶ 15) Gary was the foreman and primary contact for the Mugridges. (Arbitration Order, ¶¶ 20, 31)

The Agreement that governed the parties' relationship provides at Paragraph 13:

"In the event that ***any controversy arises at any time***, all parties agree to then submit such controversy to arbitration procedures in accordance to the rules of the American Arbitration Board."

(Compl., Exh. A – 4/20/04 Contract, ¶13) (*emphasis provided*). The parties agreed that the arbitration clause within the Agreement was valid and controlled as to all claims and counterclaims. Thus, there is no issue concerning the scope of the Arbitrator's authority to decide all aspects of the parties' dispute. Pursuant to Section 3 of the Federal Arbitration Act ("FAA"), the undersigned issued a stay of the lawsuit pending arbitration. *See* 9 U.S.C. §3.

Arbitration took place on July 19, 2011, Attorney and Certified Mediator Claude D. Smith, Jr., presiding. The net result is that the Arbitrator, who also ruled against Miller CC on various discrete issues, found that the Mugridges owed Miller CC in the amount of $58,955.71. (Arbitration Order at 6). The Mugridges, who initially sought to compel arbitration, now contend that the Arbitrator's ruling was made "in manifest disregard of the law." (Motion, 1). Specifically, the Mugridges take issue with the Arbitrator's decision that Miller CC's actions did not rise to the level of unfair and deceptive trade practice. (Motion, 1).

## II. Standard of Review

The standard of review for a petition to vacate an arbitration award is "among the narrowest known to the law." *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008). To prevail, a party seeking vacatur "must clear a high hurdle. It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Neilsen S.A. v. Animalfeeds Int'l Corp.*, 130 S.Ct 1758, 1773 (2010). It has become well-settled that a reviewing court does "not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers v. Misco*, 484 U.S. 29, 36 (1987). The Fourth

Circuit has consistently recognized that courts are entitled to "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *See e.g. Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). In sum, a court may not vacate an arbitration decision based on the belief that the arbitrator committed serious error "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority . . . ." *United Paperworkers*, 484 U.S. at 38.

### III. Discussion

The Supreme Court has described the FAA as a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). To this end, "vacatur of an arbitration award is, and must be, a rare occurrence." *Raymond James Fin. Servs, Inc. v. Bishop*, 596 F.3d 183, 184 (4th Cir. 2010).

Section 10 of the FAA enables parties to petition courts for an order vacating an arbitration award. *See* 9 U.S.C. § 10*; Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). The prescribed statutory bases for vacating an arbitration award include:

> "(1) where the award was procured by corruption, fraud, or undue means;
>
> "(2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> "(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> "(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

*Hall Street*, 552 U.S. at 582 n. 4. There is no claim by the movants of corruption, misconduct, or even that the Arbitrator exceeded his authority. Instead, the instant motion is submitted upon a

"manifest disregard for the law" theory.

"Manifest disregard" has been described in the Fourth Circuit as "an old yet enigmatic ground for overturning arbitral awards."[2] *Wachovia Securities, LLC v. Brand,* 671 F.3d 472, 480 (4th Cir.2012) (applying manifest disregard standard, finding that it survives as an independent ground for vacatur but noting circuit split). The manifest disregard standard requires more than a "showing that the arbitrator[] misconstrued the law, especially given that arbitrators are not required to explain their reasoning." *Wachovia Securities, LLC,* 671 F.3d at 481. In order to vacate an arbitration award for "manifest disregard," the movant must show: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[] refused to heed that legal principle." *Id.*, at 483.

In this case, the Mugridges argue that the Arbitrator exhibited a "manifest disregard" for the law in ruling that Miller CC's conduct did not constitute unfair or deceptive trade practice for purposes of N.C. Gen. Stat. § 75-1.1.[3] According to the Mugridges, Miller CC's "systematic overcharging" constitutes unfair and deceptive trade practice as a matter of law. The Mugridges identify several potential factual bases in support of their motion – all involve how upgrades and improvements were handled during the course of the build.[4] For example, the Mugridges contend

---

[2] Whether "manifest disregard of the law" will remain a legitimate mechanism for review of an arbitration award remains to be seen. *See Wachovia Securities, LLC v. Brand,* 671 F.3d 472, 481 n. 7 (4th Cir.2012); *Southern Comm'ns Servs., Inc. v. Thomas*, 829 F.Supp.2d 1324, (N.D.Ga. November 3, 2011) (Since the Supreme Court's pronouncement that the statutory grounds for vacatur are exclusive, "several federal circuits – including the Eleventh Circuit – have explicitly rejected manifest disregard for the law as a valid grounds for vacatur under the FAA.").

[3] Defendants Mugridges appear to imply that the Arbitrator was not competent because he didn't ask questions of defense counsel during counsel's review of the law interpreting North Carolina's UDTPA. (Def.'s Mem. In Supp., 3.)

[4] The Mugridges' motion very likely exceeds the scope of this Court's review under 9 U.S.C. §11 in that the Mugridges essentially ask this district court to review the Arbitrator's application of facts to the governing North Carolina law *de novo*. There is some authority for the proposition that substantive

that Gary Miller's failure to reveal the cost of certain recommended upgrades and improvements constitutes unfair and deceptive trade practice. The Mugridges also argue that Miller CC's attempt to recover more than Rick Miller's general contractor's license allowed, N.C. Gen. Stat. § 87-10, constitutes unfair and deceptive trade practice as a matter of law.

Because the Arbitrator's legal conclusion necessarily depends upon the findings of fact established during arbitration, the challenges brought by the Mugridges are certainly subject to reasonable debate. *See Wachovia Securities, LLC,* 671 F.3d at 483. Recognizing the significant level of deference due, the Court briefly considers the facts the Arbitrator must have determined weighed against a § 75-1.1 award.

A. Upgrades & Improvements

With respect to overcharges incurred, the Arbitrator found:

* That all of the items "except the full bath, the bar and the gas heater in the garage had been approved by" Defendants. (Arbitration Order, ¶ 29)
* That some approvals for upgrades or improvements were provided by Mr. Mugridge and some were obtained from Mrs. Mugridge (*Id.*, ¶¶ 29,30,32-36)
* "That certain upgrades were required either by the developer or by the county inspector . . . ." (*Id.*, ¶ 27)
* "That except for the addition of an upstairs bedroom and loft in the garage, the Defendants did not inquire of the changes recommended . . . ." (*Id.*, ¶ 38)
* "[B]oth parties expected the upgrades to increase the value of the house" (*Id.*, ¶ 47)
* "That the house was well constructed and the Defendants are satisfied with the quality of the construction of the house." (*Id.*, ¶ 48)

---

review is permissible as long as any action taken is consistent with the applicable law. *See Verizon Washington, D.C. Inc. v. Comm'ns Workers of Am., AFL-CIO*, 571 F.3d 1296 (D.C. Cir. 2009).

As for overcharges related to upgrades and improvements, these findings do not support Defendants' claim of "systematic overcharging." Rather, it is more typical than atypical for an anticipated upgrade or improvement to exceed the estimated cost than not. More importantly, an overcharge is a means or type of breach of contract. It is well established that a simple (*i.e.*, garden variety) breach of contract is not within the ambit of § 75-1.1. The Arbitrator's decision was not in manifest disregard of the law.

B. <u>Failure To Disclose Costs</u>

The Mugridges also argue that Gary Miller failed to reveal the cost of certain recommended upgrades and improvements and that failure to do so was "deceptive" for purposes of the UDTPA. According to the Mugridges, their detrimental reliance on Gary's representations is determinative. Concerning disclosure of costs, the Arbitrator found that the Mugridges relied on Miller CC to their "financial detriment." (Arbitration Order, ¶33) However, the Arbitrator also found that the Mugridges didn't typically ask Miller CC questions about the cost of the upgrades and improvements. (Arbitration Order, ¶¶ 33, 36) The Arbitrator held that the Mugridges' inattention "nullifie[d] any claim of deception" and rejected this argument. (Arbitration Order, ¶¶ 33, 54) The Arbitrator's decision was not in manifest disregard of the law.

C. <u>Total Cost Exceeded Licensure</u>

The Mugridges next claim that Miller CC charged them more than the contractor's license allowed it to charge pursuant to N.C. Gen. Stat. § 87-10 (1989).[5] The North Carolina Supreme

---

[5] Section 87-10 provides in pertinent part:

> The holder of an unlimited license shall be entitled to act as general contractor without restriction as to value of any single project; the holder of an intermediate license shall be entitled to act as general contractor for any single project with a value of up to one million dollars ($1,000,000); the holder of a limited license shall be entitled to act as general contractor for any single project with a value of up to five hundred thousand dollars ($500,000); and the license certificate shall be classified in accordance with this

Court explains the § 87-10 statutory scheme and purpose as follows:

> Clearly the statute contemplates a differing level of expertise for those applying for and receiving a license in the three enumerated categories [unlimited, intermediate, and limited]. In enacting this statute, the legislature reasonably determined that as the cost of a structure increased, there would be additional demands of expertise and responsibilities from the contractor. To permit a general contractor to recover amounts in excess of the allowable limit of his license would vitiate the intended purpose of this statute: to protect the public from incompetent builders. ***We therefore hold that a general contractor is entitled to recover only up to that amount authorized by his license***.

*Sample v. Morgan*, 319 S.E.2d 607 (N.C. 1984), *overruled on other grounds, abrogation recognized by Hall v. Simmons*, 407 S.E.2d 816 (N.C.1991).

In this case, the Arbitrator's award complies with Section 87-10. The Arbitrator expressly noted that Plaintiff's total recovery was capped by statute at $500,000 because of his statutory license classification as "limited". (Def.'s Mem. In Supp., ¶q / Exh. A, ¶50) Although Miller CC initially sought to recover its total cost, which exceeded $500,000 (apparently in large part due to various upgrades and improvements), these circumstances do not amount to an unfair or deceptive trade practice. The undersigned points out that the Agreement was entered into after an "estimated cost" was provided by Miller CC, the Agreement itself was a "cost plus contract"[6] and the contract did not define the term "cost." (Arbitration Order, ¶¶11,12) The Arbitrator's decision was not in manifest disregard of the law.

---

section.

[6] The contract called for Defendants to pay the cost plus 19% above cost as profit to the contractor. (Arbitration Order, ¶ 11)

## IV. Order

Having reviewed the Arbitrator's factual findings and conclusions of law, as well as the applicable case law, this Court finds that the Arbitration Award should stand. There is no substantive or procedural basis for vacatur of the Arbitrator's decision. In conclusion, the Arbitrator did not act in manifest disregard of the law.

**IT IS HEREBY ORDERED** that Defendants' Motion to Vacate Arbitration Award is **DENIED**.

Signed: October 18, 2012

Richard L. Voorhees
United States District Judge